## Papania v. Papas.

(Decided June 12, 1925.)

### Appeal from Perry Circuit Court.

1. Contracts—Forfeiture Not Favored—Construction Against Forfeiture will be Adopted.—Forfeitures are not favored in the law, and if language from which they are supposed to emanate is susceptible of two constructions, one of which would sustain forfeiture and other deny it, latter interpretation will be adopted.

2. Landlord and Tenant—Contract by which Lessor was to Construct Building for Lessee and to Receive Two Years' Rent in Advance Construed.—Under contract by which lessor was to construct a building and to lease part of it to lessee, who was to pay two years' rent in advance, if lessor commenced construction within two weeks, otherwise contract was to be void, and requiring lessor to keep building insured for amount paid by lessee, when construction of building had progressed to a point where lessor could procure insurance thereon equal to amount paid by lessee, lessor had right to receive payment of such sum from lessee and not till then.

J. W. CRAFT for appellant.

NAPIER & HELM for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Johnson & Jones owned a vacant lot on Main street, in Hazard, Kentucky, fronting 50 feet on that street and running back 60 feet. They ground-rented a part of it to appellee, Jimmy Papas (to whom we shall hereafter refer as Jimmy) 16 feet fronting on Main street and running back thirty-five feet, for ten years at an agreed monthly rental, upon which the lessee was to construct at his own expense a building in which to conduct a restaurant, with the privilege of removing it at the expiration of the lease. In the same way they rented to appellant, Sam Papania (to whom we shall hereafter refer as Sam) the remainder of the lot upon which he was to erect, at his own expense, a building in which to con-

duct a bakery business with the same privileges at the expiration of the lease. Sam desired to cover the whole lot with a building he contemplated constructing and he and Jimmy entered into a written contract whereby Sam agreed that he would construct a building and would cut off for Jimmy's use a space sixteen by thirty-five feet in which he might conduct his restaurant business, and Jimmy agreed to pay as rental therefor the sum of $25.00 per month, but with the further understanding that he would pay two years' rent in advance, and to which we will hereafter refer. It was further agreed between them in that contract that if Sam did not commence the construction of his building within two weeks after the date of the contract (October 5, 1921) then Jimmy should have the right to declare the con-tract void and proceed to construct his building under the contract he had with Johnson & Jones and to which the latter agreed. In the lease contract between the parties hereto there were these additional stipulations: "However, should first parties (Sam and wife) begin construction of their building within said two weeks, then party of the second part (Jimmy) shall pay unto said first parties the sum of six hundred dollars in cash representing the first two years' rental provided for herein, in advance, and in event of said advancement of said sum, first parties agreed to keep the building of said second party insured to the extent of said $600.00 by paying the premium on that amount of· insurance for second party and keep the same insured for said sum until said amount so advanced shall have been exhausted by the occupancy of said parcel by second party until his rent shall have equalled said sum. It is provided, however, that should said building burn before second party has consumed all of said payment the loss payable under the policy covering the same shall be prorated between the parties hereto as their interests appear."

Sam commenced the erection of his building within the two weeks and finished it in about eight weeks. After the expiration of two weeks from the time he began his structure he notified Jimmy that under the above excerpt from the lease contract the latter had forfeited his right under the lease by not paying the $600.00 within that time, which was the construction that Sam put upon the contract, while Jimmy construed it to mean that his $600.00 advance payment was not due thereunder till

the building was sufficiently advanced to enable Sam to procure a fire insurance policy on it for as much as $600.00 with which to protect him in case the building should be destroyed by fire during the term and before the two years' occupancy for the rent for which that payment was made. Notwithstanding his interpretation of the contract Jimmy, after being so notified, tendered to Sam the $600.00, and when the building was about completed he moved in the room which he was to occupy, some counters and other fixtures, whereupon Sam, without any process of law, removed the fixtures and put them in the street. Jimmy then brought one of these equity actions against him to enjoin him from interfering with its occupancy and from trespassing upon his right of possession of the space of sixteen by thirty-five feet and besides alleging his interpretation of the contract, he sought its reformation on the ground that it did not embody the true contract between the parties in providing for a forfeiture of the lease upon his nonpayment of rent, contrary to what he said was the actual contract, and which he averred was inserted in the contract by mistake. He procured a temporary restraining order in that case and afterwards Sam brought another action against Jimmy seeking to restrain him from attempting to occupy the property, and he also obtained a restraining order in that case, and each of those orders were co-existent and remained in force until the final disposition of the two actions, which were consolidated and heard together. Upon final submission the court sustained the prayer of Jimmy's petition and enjoined Sam from molesting him or in any wise interfering with his occupying the premises, and dismissed Sam's petition, from which judgment he prosecutes this appeal.

It readily will be seen that the only two questions in the case are: (1) The proper interpretation of the contract, and (2), if it provides for the payment by Jimmy of the $600.00 within two weeks after the commencement of the construction of the building by Sam, then was the forfeiture provision agreed to and properly inserted in the contract?

The court did not base its judgment upon a construction of the contract, but found that the forfeiture clause was inserted therein by mistake and reformed the contract accordingly. If it were necessary to base

our opinion upon the finding of the court in that respect it would not be a difficult task to do so under the proof in the case; but we are thoroughly convinced that a true construction of the contract did not provide for the payment of the $600.00 by Jimmy until Sam procured that amount of insurance on his building, hence it will be unnecessary to review the court's finding on the issue of fact.

Prefacing what we shall say concerning the terms of the lease contract, it should first be stated that forfeitures are not favored in the law and if the employed language from which they are supposed to emanate is susceptible of two constructions, one of which would sustain the forfeiture and the other deny it, the latter interpretation will be adopted with, perhaps, some few exceptions of which this class of case is not one. That general rule is universally recognized and applied and we will content ourselves by referring to only one late case from this court which is, Andrew Hogg and Pluto Coal Co. v. Forsythe, 198 Ky. 462. With that rule in mind we will now take up for interpretation the above excerpt from the contract.

It will be observed that there is no *express* provision for the payment of the $600.00 by the lessee (Jimmy) *immediately* upon the expiration of the two weeks within which the construction of the building should be commenced, but the obligation to pay the $600.00 by him *and* the corresponding obligation of Sam to construct a building only became final and absolute if he commenced the construction within that time. It was only conditional up to that time, since if he failed to so commence his building then Jimmy had the privilege of carrying out his lease with Johnson & Jones and to ignore altogether his subsequent lease with Sam. The language also provided that upon the payment of the $600.00 by the lessee then the lessor should insure the building to the extent of $600.00, which necessarily could not be done until the construction of the building had been advanced to the point where that amount of insurance could be obtained on it. The two acts, *i. e.*, that of payment and insurance were to be simultaneous, since without the insurance Jimmy would be without any security whatever for his advance payment. Furthermore, if Sam's construction be the true one then the $600.00 would become due with the corresponding penalty of forfeiture immediately upon the spading of the first shovel of dirt by Sam,

although he postponed that act until the last day of the two weeks. We are confident that the parties contemplated no such effect and that what they had in mind, and what a fair construction of the language sustains is, that, when the construction of the building had progressed to the point where Sam could procure the $600.00 insurance thereon, as provided in the contract, then he had the right to receive payment of that sum from Jimmy and not until then.

Two forfeitures were provided for in the contract. One was that the lessor should commence the construction of this building within two weeks from the date of the lease contract, or forfeit his right thereto. The other was that if the construction of the building was commenced within the time provided, then the lessee would pay to the lessor $600.00 advance rent, but he should simultaneously receive as security therefor the benefits of the insurance provided for. One of them was made applicable to the lessor and the other to the lessee, but the latter could not be compelled to pay the advance rent until the former was prepared to indemnify him, as provided in the contract. Indeed, it would require a strained construction to give the language any other interpretation. If, however, it were otherwise and the language under consideration was equally as susceptible of the construction contended for by Sam as it was for the one contended for by Jimmy, then under the rule, *supra,* it would be our duty to adopt the latter interpretation. The judgment of the court having carried into effect our conclusions should be affirmed, although he may have based it upon a different ground, under a rule of practice everywhere acknowledged and applied.

Wherefore, the judgment is affirmed.